UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - -:
SONIE INNOCENT,                      : 05 Civ. 6057 (JCF)
                                     :
          Plaintiff,                 :   MEMORANDUM
                                     :   AND   ORDER
     - against -                     :
                                     :
HK HOTELS, LLC,                      :
                                     :
          Defendant,                 :
- - - - - - - - - - - - - - - - - - -
JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

  The plaintiff in this action, Sonie Innocent, originally filed a complaint alleging that Hotel Gansevoort Group LLC ("Gansevoort") discriminated against her in her employment in violation of (1) Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"); (2) the New York State Human Rights Law, N.Y. Executive Law § 290 et seq.; and (3) the New York City Human Rights Law, New York City Administrative Code § 8-101 et seq. She later amended her complaint to substitute HK Hotels, LLC ("HK") as the defendant in place of Gansevoort. She now moves pursuant to Rule 15(a) of the Federal Rules of Civil Procedure to amend her complaint again to add a wage and hour misclassification claim under the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. (the "FLSA"), and Article 19 of the New York Labor Law and implementing regulations, 12 N.Y.C.R.R. Part 142 ("New York Labor Law"). The plaintiff also moves to withdraw her New York State Human Rights Law cause of action and to make other minor changes to her original

1

complaint. For the following reasons, Ms. Innocent's motion is granted.[1]

Background

HK, the defendant, operates and manages a luxury hotel owned by Gansevoort. (Second Amended Complaint("SAC") attached as Exh. 1 to Plaintiff's Motion for Leave to Amend her Complaint and Supporting Memorandum of Law ("Plaintiff's Memo."), ¶ 6). Ms. Innocent began working for the defendant on January 26, 2004, as a room attendant, and in April 2004 was promoted to the position of floor manager. (SAC, ¶¶ 13-14). Her responsibilities included assigning staff to clean specific rooms, addressing complaints from guests, inspecting rooms, and opening and closing the housekeeping department. (SAC, ¶ 13). Ms. Innocent usually worked from 8:30 a.m. to 4:30 p.m. five days a week, and sometimes rotated through the night shift, which was from 4:00 p.m. to 12:00 a.m. (SAC, ¶ 15). On July 11, 2004, Ms. Innocent learned that she was pregnant and informed her supervisor, George Deleon. (SAC, ¶ 16). On July 28, 2004, after Mr. Deleon had resigned, Joel Freyberg, Ms. Innocent's new supervisor, assigned her to work the night shift five nights a week. (SAC, ¶ 19). Ms. Innocent informed Mr. Freyberg that the floor managers had traditionally rotated and that she did not want to work the night shift. (SAC, ¶ 19). Ms.

---

[1] Defendant's counsel requested oral argument on this motion. However, because both the law and the facts are straightforward, oral argument is unnecessary.

Innocent also told the housekeeping director, Bertha Maras, that her pregnancy made it too difficult for her to work the night shift on a regular basis. (SAC, ¶¶ 22-23). The following week, Ms. Maras announced that she and Mr. Freyberg had decided to assign Ms. Innocent to the night shift permanently, commenting that "hotel business was 24 hours a day, 7 days a week." (SAC, ¶ 23). Ms. Innocent again spoke with Mr. Freyberg regarding her night shift schedule, and he responded that he would have a meeting with all the managers to discuss the issue. (SAC, ¶ 24). However, this meeting never took place. On August 25, 2004, Ms. Maras told Ms. Innocent that she should go home as she was not needed to work that evening. (SAC at 5). Before she could leave, Mr. Freyberg approached Mr. Innocent with the head of security at his side and terminated her employment, telling her that her work was not "hotel standard" and that she would no longer be needed. (SAC, ¶¶ 25-27).

Ms. Innocent filed a charge of employment discrimination with the Equal Employment Opportunity Commission (the "EEOC") in November 2004, and received a Notice of Right to Sue on June 13, 2005. (SAC, ¶¶ 3-4). She filed her original complaint in this action on June 29, 2005, alleging that Gansevoort discriminated against her because of her pregnancy. (Complaint, ¶ 1). On October 13, 2005, the plaintiff amended her complaint to remove Gansevoort as the defendant and substitute HK. (First Amended Complaint, ¶ 1). At a pretrial conference on November 18, 2005,

the Court set March 31, 2006, as the deadline for completing discovery (Order dated November 18, 2005), and in February 2006, the parties received an extension of that deadline until April 30, 2006. (Order dated February 15, 2006). Then, during their depositions on April 4 and 5, 2006, Ms. Maras and Mr. Freyberg testified that although HK had classified Ms. Innocent as a manager, exempt from overtime pay, she in fact performed few managerial duties and could not hire, fire, discipline, or promote any of the attendants she supervised. (Deposition of Joel Freyberg ("Freyberg Dep."), attached as Exh. 1 to Plaintiff's Reply Memorandum of Law ("Plaintiff's Reply Memo."), at 115; Deposition of Bertha Maras ("Maras Dep."), attached as Exh. 2 to Plaintiff's Reply Memo, at 80-81).

Subsequently, on April 25, 2006, the plaintiff moved for leave to file a second amended complaint to add a wage and hour misclassification claim pursuant to the FLSA and New York Labor Law. (SAC, ¶¶ 39-57). In her proposed second amended complaint, Ms. Innocent also withdrew her New York State Human Rights Law claim and made other less significant changes. (SAC, ¶¶ 58-64). HK opposes the plaintiff's motion to add the wage and hour claim but does not object to the other proposed amendments.

<u>Discussion</u>

A motion to amend is governed by Rule 15(a) of the Federal Rules of Civil Procedure, which states that leave to amend "shall

4

be freely given when justice so requires." Fed. R. Civ. P. 15(a); see also <u>Oneida Indian Nation of New York v. City of Sherill</u>, 337 F.3d 139, 168 (2d Cir. 2003); <u>rev'd on other grounds</u>, 544 U.S. 197 (2005). Notwithstanding the liberality of the general rule, "it is within the sound discretion of the court whether to grant leave to amend," <u>John Hancock Mutual Life Insurance Co. V. Amerford International Corp.</u>, 22 F.3d 458, 462 (2d Cir. 1994)(citation omitted), and for the proper reasons, a court may deny permission to amend in whole or in part. See <u>Krumme v. WestPoint Stevens Inc.</u>, 143 F.3d 71, 88 (2d Cir. 1998). In discussing the use of this discretion, the Supreme Court has stated:

> In the absence of any apparent or declared reason -- such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. -- the leave should . . . be freely given.

<u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962). Here, HK opposes the motion to amend on the grounds that it was unduly delayed, prejudicial to the defendant, offered in bad faith, and futile.

    A. <u>Delay and Prejudice</u>

HK's first argument is that the plaintiff unduly delayed in seeking amendment. HK points out that the motion to amend was made five days before the close of discovery and eighteen months after Ms. Innocent made allegations to the EEOC that she had wrongfully been denied overtime. (Defendant's Memorandum of Law in Opposition

to Plaintiff's Motion to Amend Her Complaint ("Def. Memo.") at 4).

HK's argument fails in two respects. First, were it not for HK's discovery delays, the plaintiff could have moved more expeditiously to amend her complaint. Before adding the wage and hour misclassification claim, the plaintiff had hoped to receive from the defendant relevant documents such as Ms. Innocent's pay stubs and time sheets. Plaintiff's counsel had numerous phone conversations with defendant's counsel regarding the defendant's delay in producing these documents, and on five occasions sent letters concerning the defendant's failure to produce Ms. Innocent's time sheets. (Letters from plaintiff's counsel, attached as Exh. 2 to Plaintiff's Memo.). On March 17, 2006, the defendant informed plaintiff's counsel that it did not have in its possession the requested documents. (Letter of Sophia Ree dated March 17, 2006, attached as Exh. 3 to Plaintiff's Memo.). However, both Mr. Freyberg and Ms. Maras testified in their depositions that time sheets for employees like Ms. Innocent were stored in the comptroller's office. (Freyberg Dep., attached as Exh. 4 to Plaintiff's Memo., at 116; Maras Dep., attached as Exh. 5 to Plaintiff's Memo., at 61-65, 68). Accordingly, in an order dated May 11, 2006, I permitted the plaintiff to reserve her right to apply for an adverse inference in light of the defendant's failure to produce the requested time sheets. (Order dated May 11, 2006).

Rather than addressing the plaintiff's allegations of

discovery delays, HK contends that Ms. Innocent was aware of and had the opportunity to assert her wage and hour claim in her original complaint. The company argues that Ms. Innocent's affidavit and the affidavits of her co-workers, produced in connection with the EEOC charge in November 2004, demonstrate that Ms. Innocent knew then that she worked overtime but was uncompensated. (Def. Memo. at 2). However, the plaintiff's simple awareness that she was not paid for overtime was insufficient to support the claim she asserts here. Ms. Innocent's theory of relief stems from the allegation that HK misclassified her as exempt from overtime pay based on her duties. In this regard, the deposition testimony of Mr. Freyberg and Ms. Maras to the effect that Ms. Innocent had little managerial responsibility or authority was necessary in order for the plaintiff to have a colorable basis for asserting her claim. After having clarified these facts, the plaintiff sought to amend her complaint three weeks later on April 25, 2006. Courts have permitted amendments where there was a much longer delay between the time the moving party learned the relevant facts and the date on which the motion to amend was filed. See, e.g., Securities and Exchange Commission v. DCI Telecommunications, Inc., 207 F.R.D. 32, 34 (S.D.N.Y. 2002); Green v. Wolf Corp., 50 F.R.D., 220, 223 (S.D.N.Y. 1970) (plaintiff aware of facts asserted in amended complaint from outset of case); Middle Atlantic Utilities Co. v. S.M.V. Development Corp., 392 F.2d 380, 385 (2d

Cir. 1968) (plaintiff aware of facts supporting new claims two years before filing of original complaint). Hence, Ms. Innocent's motion was not unduly delayed.

Second, even if the plaintiff was dilatory in moving to amend, that alone would not warrant denying the motion. Delay, absent bad faith or prejudice, is not a sufficient basis for denying leave to amend. See Parker v. Columbia Pictures Industries, 204 F.3d 326, 339 (2d Cir. 2000); Block v. First Blood Associates, 988 F.2d 344, 350 (2d Cir. 1993); Richardson Greenshields Securities, Inc. v. Lau, 825 F.2d 647, 653 n.6 (2d Cir. 1987); In re Horizon Cruises Litigation, 101 F. Supp. 2d 204, 215 (S.D.N.Y. 2000). The longer the period of unexplained delay, the less is required of the nonmoving party with regard to showing prejudice. Evans v. Syracuse City School District, 704 F.2d 44, 47 (2d Cir. 1983). In determining whether a party's interests have been unduly prejudiced, courts consider whether assertion of the new claim would require the opponent to expend significant additional resources to conduct discovery and prepare for trial, significantly delay the resolution of the dispute, or prevent the plaintiff from bringing a timely action in another jurisdiction. Block, 988 F.2d at 350.

Here, the only prejudice that HK asserts is that it will be required to expend additional resources to conduct discovery, noting in particular the added expense of obtaining an expert to

evaluate the information relating to the wage and hour claim. (Def. Memo. at 5). However, because HK controls the pay records, witnesses, and information about the scope of its employees' duties, HK will not require substantial supplemental discovery from the plaintiff. Rather, the only incremental expense that HK will likely incur relates to reopening the deposition of Ms. Innocent. HK will, of course, need to pay any expert it chooses to retain, but it would have had to incur this expense if Ms. Innocent had included the misclassification claim in her original pleading. Moreover, even assuming that the defendant is faced with further expenses, the adverse party's burden of undertaking discovery, standing alone, does not warrant denial of a motion to amend a pleading. United States v. Continental Illinois National Bank & Trust Co., 889 F.2d 1248, 1255 (2d Cir. 1989); see also A.V. by Versace, Inc. v. Gianni Versace S.p.A., 87 F. Supp. 2d 281, 299 (S.D.N.Y 2000).

    B. Bad Faith

The defendant next argues that Ms. Innocent has acted in bad faith because she added the wage and hour claim to induce settlement by burdening HK with discovery. Leave to amend a complaint may be denied where there is danger that the plaintiff has raised a new theory of relief merely in order to force a favorable settlement. Barrows v. Forest Laboratories, Inc., 742 F.2d 54, 58 (2d Cir. 1984).

Here, the defendant points to an e-mail from plaintiff's counsel communicating the plaintiff's intention to assert a class action wage and hour misclassification claim, and also mentioning the possibility of settlement, as evidence of the plaintiff's bad faith. (E-mail of Tammy Marzigliano, dated April 18, 2006, attached as Exh. 3 to Def. Memo.). However, the plaintiff later abandoned the class action allegation, choosing instead to bring a claim only on behalf of Ms. Innocent. Moreover, the mere mention of negotiation in one e-mail hardly reflects an intent to extort a favorable settlement from HK. Given that the addition of any claim has the potential to alter the calculus of settlement negotiations, courts should be wary of deterring counsel from raising the issue of settlement for fear that doing so will foreclose the possibility of amendment.

C. Futility

A motion to amend is futile and therefore may be denied if the amendment would not withstand a motion to dismiss. See Oneida Indian Nation, 337 F.3d at 168; Milanese v. Rust-Oleum Corp., 244 F.3d 104, 110 (2d Cir. 2001); Nettis v. Levitt, 241 F.3d 186, 193 (2d Cir. 2001); Smith v. CPC International, Inc., 104 F. Supp. 2d 272, 274 (S.D.N.Y. 2000). To overcome objections of futility, the moving party must merely show that it had "at least colorable grounds for relief." Ryder Energy Distribution Corp. v. Merill Lynch Commodities Inc., 748 F.2d 774, 773 (2d Cir. 1984) (citation

omitted); see also Kaster v. Modification Systems, Inc., 731 F.2d 1014, 1018 (2d Cir. 1984).

Here, the defendant contends that the motion to amend should be denied on the ground that any wage and hour claim under the FLSA is barred by the statute of limitations, which is generally two years. Indeed, amendment of a complaint is futile where the statute of limitations has run on the claims that the plaintiff seeks to add. See Leonelli v. Pennwalt Corp., 887 F.2d 1195, 1199 (2d Cir. 1989). However, the statute of limitations is three years for willful violations of the FLSA, 29 U.S.C. § 255(a), and the plaintiff asserts in her proposed amended complaint that the defendant willfully failed to make required overtime payments. (SAC, ¶¶ 49-51). Moreover, the statute of limitations under New York Labor Law is six years. See Gustafson v. Bell Atlantic Corp., 171 F. Supp. 2d 311, 322 (S.D.N.Y. Oct. 26, 2001) (noting that New York Labor Law § 198(3) provides a six-year statute of limitations for wage claims). Therefore, Ms. Innocent's claim that HK failed to properly compensate her is not futile.

Conclusion

For the reasons set forth above, Ms. Innocent's motion to amend her complaint is granted. Within ten days of the date of this order, counsel shall submit a proposed revised discovery schedule.

SO ORDERED.

*[signature: James C. Francis IV]*

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated:   New York, New York
         August 9, 2006


Copies mailed this date:

Gary Phelan, Esq.
Outten & Golden LLP
4 Landmark Square, Suite 201
Stamford, CT  06901

Tammy Marzigliano, Esq.
Outten & Golden LLP
3 Park Avenue, 29th Floor
New York, New York   10016

Joseph M. Tomaino, Esq.
Jennifer B. Hein, Esq.
Landman Corsi Ballaine & Ford PC
120 Broadway, 27th Floor
New York, New York   10271